## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN BOWER, on behalf of himself
and his minor daughter, MARIA BOWER,

      Plaintiffs,

v.                                                                                              CIV-04-0913 JB/DJS

RISD, SUSAN SANCHEZ, BARBARA
RYAN, BARBARA COOPER, BARBARA
NORFOR, LEE WILLITS, PERSONNEL
DIRECTOR, DR. FRESQUES, Superintendent of Schools,
ALL MEMBERS OF THE SCHOOL BOARD (JAMES
BIGNELL, JUAN OROPESA, ALBERTINA
SILVA, RUSTY RYAN, JAMES WALDRIP),
U.S. DEPARTMENT OF EDUCATION OFFICE
OF CIVIL RIGHTS, DAVE DUNBAR, SANDRA
SANCHEZ, PAULA MARTINEZ, U.S. DEPARTMENT
OF EDUCATION OFFICE OF SPECIAL EDUCATION,
NEW MEXICO DEPARTMENT OF EDUCATION,
NEW MEXICO BOARD OF EDUCATION,
"BEHAVIORAL SPECIALIST" FOR ROSWELL HIGH
SCHOOL, PRINCIPAL MIKE KAKUSKA, PRESIDENT
GEORGE W. BUSH, SECRETARY OF EDUCATION PAIGE,
U.S. SENATOR JEFF BINGAMAN,

      Defendants.

## <u>MEMORANDUM OPINION and ORDER</u>

**THIS MATTER** comes before the Court on the following motions: (i) the Roswell School

Defendants' Motion to Dismiss, filed Feb. 7, 2005 (Doc. 13); (ii) the Plaintiffs' Motion to Deny

RISD Defendants' Motion to Dismiss, filed Feb. 23, 2005 (Doc. 30); (iii) the Plaintiffs' Motion to

Deny RISD Defendants' Motion to Dismiss, filed Feb. 28, 2005 (Doc. 33); (iv) the Plaintiffs' Motion

for Summary Judgment, filed April 27, 2005 (Doc. 39); (v) the Plaintiffs' Renewed Motion for

Summary Judgment, filed May 5, 2005 (Doc. 40); (vi) the Roswell School Defendants' Motion to

Strike Plaintiffs' Memorandum of Facts in Support of Plaintiffs' Renewed Motion for Summary Judgment, filed June 27, 2005 (Doc. 45); (vii) the Plaintiffs' Motion for Leave to File Untimely Memorandum in Support of Renewed Motion for Summary Judgment, filed July 13, 2005 (Doc. 46); and (viii) the Plaintiffs' Motion to Dismiss Federal Defendants, filed Feb. 1, 2006 (Doc. 61). The Court has previously granted Plaintiff John Bower's request to proceed *in forma pauperis*. See Doc. 2. The Court, therefore, has also screened the Complaint pursuant to its duty to do so under 28 U.S.C. § 1915(e)(2)(B)[1]. The Court has considered the parties' briefs, the record, and the applicable law, and will grant the Roswell School Defendants' motion to dismiss and the Plaintiffs' motion to dismiss the federal Defendants. The Court will also dismiss the supplemental state-law claims, and will deny or dismiss all other motions.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court herein summarizes Plaintiff John Bower's thirty-four page Complaint, noting only those allegations directed at each Defendant who allegedly injured Bower. Bower is a New Mexico resident.[2] Defendant Roswell Independent School District ("RISD") hired Bower in October 1999

---

[1] Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss a case brought by a plaintiff proceeding *in forma pauperis* "at any time" if the court determines that the action is frivolous or fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from suit.

[2] Bower invoked federal jurisdiction by citing 28 U.S.C. §§ 1331 and 1343. See Complaint at 1. Bower's complaint and other filings indicated that, although he is teaching overseas, he still owns a home in Roswell where his wife and daughter live, and he intends to return. See id. at 29; Application to Proceed In Forma Pauperis, Doc. 2 at 2; Summons, Doc. 3 (showing Bower's address in Roswell); Amended Response, Doc. 31 at 6 (stating that Bower was in Korea, "far from home"). New Mexico is, therefore, his actual residence for diversity purposes. See Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) (noting that "[d]omicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.") (internal quotations and citations omitted).

to be a resource-room teacher at an elementary school.  <u>See</u> Complaint at 2.  He was not a certified special education teacher.  <u>See</u> <u>id.</u> at 11, 21.

Bower told Defendant Susan Sanchez, the principal at the elementary school, that he "was ADD."  <u>Id.</u> at 2.  Sanchez later reprimanded him "just outside the door of the classroom," Pl. Amended Resp. at 2,  for "yelling at a student," Complaint at 2.  According to Bower, this confrontation caused students to lie about him and to undermine his authority.  <u>See</u> <u>id.</u>

Sanchez "did nothing to help with discipline."  <u>Id.</u>  She went to his classroom to investigate claims the children made against him.  <u>Id.</u>  Bower asserts that Sanchez' refusal to help with discipline problems created a "hostile environment" for him.  Pl. Amended Resp. at 2.

Sanchez did not allow Bower to teach his students in small groups for about five months, requiring him to stay in the main classroom with the regular classroom teacher.  <u>See</u> Complaint at 2; <u>id.</u> at 9.  A few months after Bower was hired, Sanchez placed him on a "growth plan" that, in Bower's view, "was not appropriate for a special education teacher and was not explained in any way as Ms. Sanchez was obligated to do."  <u>Id.</u> at 2.  Bower explained in his Amended Response that the growth plan was not relevant because it involved watching three videos "which were for regular education teachers, not special education teachers."  Pl. Amend. Resp. at 2.

Sanchez and her successor, Defendant Barbara Ryan, failed to supply Bower with satisfactory computer equipment, which made his job more difficult.  <u>See</u> Complaint at 2-3.  When Bower attempted to implement what he learned from watching a growth-plan training video, Ryan and one of Bower's cooperating classroom teachers "bitterly complained that plaintiff was 'picking on' some of his students and removed him from his area of responsibility."  <u>Id.</u> at 4.  Like Sanchez, Ryan made no effort to help Bower with student discipline.  <u>See</u> <u>id.</u> at 5.

-3-

Ryan told Bower "not to provide services to his students." Id. She would not allow him to remove students from the regular classroom for teaching sessions. See id. at 6. Ryan criticized Bower's teaching methods and reprimanded him for "disobeying a first year teacher." Id. at 8. Bower explains that, instead of administering a vocabulary matching test as the first-year classroom teacher had requested, he "used the test to teach [the students] how to take the test" so that they made 100% on the test with Bower's help. Id.

Ryan also reprimanded Bower for wearing a shirt that was too small and exposed his navel, but she did not punish students who violated the dress code and did not punish a female teacher "whose navel was visible in one of her outfits." Id. Ryan reprimanded Bower for wearing a hat inside the building, id. at 8-9, and for conducting what she believed was an individualized educational plan ("IEP") meeting in fifteen minutes without investigating the fact that the meeting was only an "addendum," id. at 9. Ryan reprimanded Bower for not calling in when he was sick, but Bower contends his call was lost because of human or mechanical error. See id.

After the RISD determined there were not enough special education students at the elementary school where Bower was teaching to support his position for the 2000-2001 school year, it gave him a list of sites that needed part-time or full-time special education assistance, and invited him to list the schools in order of his preference. See id. at 11. The RISD, through Defendant Barbara Norfor, assigned him to teach at an alternative school that was last on Bower's preference list. See id. at 11-12. Defendant Lee Willits was his supervisor at that school.

According to Bower, Willits made demands that were "impossible for him to keep up with" and that were contradictory in his view. Id. at 12. Bower had one main student at the alternative school, and Willits criticized Bower's method of teaching that student, which Bower called "planned

ignoring." Id. at 13.  That is, when the student would not work, Bower would go into another room, ignore the student, and use the computer.  See id.

Willits reprimanded Bower for leaving on a light.  See id. at 14.  She would interrupt him, but she did not interrupt the female aides, and she stated to him that "all men are babies," thereby, according to Bower, making "it clear she hates men."   Id. at 14.  Willits did not give Bower sufficient information about new students who were sent to Bower's class for help with assignments prepared by the classroom teacher, so he was forced to discover their learning deficiencies on his own.  See id. at 16.

Willits orally reprimanded Bower for inviting a parent to an IEP meeting, but Bower states that he was following federal law requiring schools to encourage parents to attend IEP meetings. See id. at 17.  Willits would give Bower instructions when he was working with a student, so Bower would not be able to remember many of her instructions because of his ADD.  See id.  For example, she wanted Bower to design a system for keeping track of student attendance, "but never clearly defined what she wanted," so Willits and an aide ended up designing the system.  Id. at 18.  Bower complains that Willits instructed him to throw away students' work product, which, in his opinion, violated federal privacy laws because he was not instructed to shred the papers before throwing them away.  See id. at 22.

In March 2001, Willits and Norfor met with Bower to tell him they were recommending that RISD not rehire him for the following school year.  See id. at 18.  They stated that teaching special education was not his "niche" and that he was not meeting RISD's needs.  See id.  Bower agreed that teaching at the alternative school site was not his "niche," but explained that "he had not requested to be moved there," and RISD would not move him to another school.  Id.

Willits had filled out a standard performance evaluation for Bower consisting of about twenty categories.  See id. at 18.  She marked one category "NA," gave him a "favorable" rating for one category, and "negative[ly]" marked the remaining categories.  Id.   According to Bower, the evaluation indicated that he did not "demonstrate understanding of special education laws" and Willits "rated him unsatisfactory for showing respect for others."  Id. at 19.[3]  Bower contends that this negative evaluation was "baseless," and "fraudulent and libelous."  Id. at 24, 23.  He states that a personnel director withdrew a job offer in Texas after learning about the evaluation.  See id. at 23.  Although Bower has been teaching in schools overseas since RISD did not rehire hire him, he asserts that the evaluation destroyed his career as a teacher in the United States.  See id. at 27.

Willits and Norfor gave Bower another "growth plan" in the March 2001 meeting, and Norfor allegedly told him that if he met the plan's objectives, he would be hired again for the next year.  Id. at 19.  Bower states that he met all of the plan's objectives except for one:  making lesson plans "based on the state benchmarks for students."  Id. at 20.  He states that he could not meet this objective because he did not have the benchmarks until shortly before the school year ended and because "the competencies were written in terms difficult for plaintiff to understand since he is not licensed to teach biology, algebra, grammar, etc."  Id.   He further states that, because some of his students were reading at beginning levels, instructing them in high-school-level academia "would

---

[3]  Bower attached the evaluation to one of his motions.  The evaluation shows that Willits indicated that Bower either "needs improvement" or was "unsatisfactory" in all areas of professionalism, professional knowledge, human grown and development, assessment/evaluation, curriculum development, and classroom management.  Willits rated Bower as "needs improvement" in working productively with administrators, supervisors, students, parents, and community members; in demonstrating adherence to established timelines and procedures; in modeling respect, understanding, and appreciation for all people; and in demonstrating a willingness to change, as appropriate.  See Doc. 46 Ex. B.

be nearly impossible without some input from the classroom teachers." Id.

Bower states that he reported his problems to an unidentified RISD personnel director, who went to the alternative school site to investigate. See id. at 23. But the personnel director did not ultimately give credence to Bower's complaints, allegedly telling him he could not "'criticize school administrators.'" Id. Bower's letters of complaint to Dr. Fresquez, the RISD superintendent, were referred to the personnel director, and none of the local school board members responded to his letters. See id. at 24.

Bower contends that failing to rehire him constitutes wrongful termination and gender and race discrimination. See id. at 18; Doc. 31 at 2. He speculates that "maybe" RISD fired him for obeying "federal law in refusing to pass" one of his students, or "maybe . . . because he has ADD," or "because he is a man," or "because he is white and defendant Norfor is black." Complaint at 22.

After the decision not to rehire him became final, Bower filed a complaint with the Office of Civil Rights ("OCR") of the United States Department of Education. OCR "dismissed the complaint on grounds that [it] had no basis in fact" because it had not been filed within ninety days of the events Bower complained of. Id. at 24, 7. Bower filed a motion for reconsideration, but states that OCR has not ruled on it. According to Bower, "OCR claims they referred his case to EEOC," but he has never heard from the EEOC "in nearly three years and OCR refuses to give him any information on whom to contact there. He believes [OCR] might not have referred his case to them at all." Id. at 24. Bower also filed a complaint with the Office of Special Education in the United States Department of Education, but, according to him, that office has taken no action. See id. at 25.

Bower's complaint against Defendant Mike Kakuska, the principal at Roswell High School, arises from Kakuska's alleged failure (i) to send Bower information about how Bower's daughter,

Maria –  who has bipolar disorder and schizophrenia –  was bruised while at school; (ii) to include him in Maria's IEP meetings; and (iii) to explain why Maria had been regressing at Roswell High instead of progressing.  See id.; id. at 27.  Bower contends that the OCR dismissed his complaint regarding these problems.  See id. at 26.

Bower complains that Defendants New Mexico Department of Education and the New Mexico School Board "are not doing enough to educate teachers to recognize handicaps and deal with those handicaps," or to "supervise instruction given to regular education and special education teachers." Id. at 4.  He contends that the New Mexico Department of Education is violating the law because it knows that New Mexico needs special education teachers and is doing nothing to solve the problem.  See id. at 23.  He complains that the Department ignored his phone calls and complaints.  He asserts that the United States Department of Education is refusing to enforce the laws.  See id. at 26.

Bower states that the President of the United States, the Secretary of Education, and Senator Bingaman have been informed of the problems but refused to respond, thus failing in their duties to make sure that "laws are faithfully executed." Id.  He contends that the other Defendants "ratified" Sanchez', Willits', and Ryan's actions. Id. at 30.

The Defendants associated with or employed by the RISD move to dismiss for failure to state a claim; Bower moved for summary judgment and requested dismissal of the federal Defendants.

## GENERAL LEGAL STANDARDS

In considering a motion to dismiss a  complaint for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See Hall v. Bellmon, 935

F.2d 1106, 1109 (10th Cir. 1991).  Where it appears beyond doubt that a plaintiff cannot prove any

set of facts that would entitle him to relief, a court may dismiss the cause of action.  See Jojola v.

Chavez, 55 F.3d 488, 490 (10th Cir. 1995).  The issue is not whether the plaintiff will ultimately

prevail, but whether the plaintiff is entitled to offer evidence to support his claim.  See Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974).

    In reviewing a pro se complaint, the court applies the same legal standards applicable to

pleadings that counsel drafts, but is mindful that the complaint must be liberally construed.  See Hall

v. Bellmon, 935 F.2d at 1110.  But "[t]he broad reading of the plaintiff's complaint does not relieve

the plaintiff of alleging sufficient facts on which a recognized legal claim could be based."  Id.

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are
> missing some important element that may not have occurred to him, should be
> allowed to amend his complaint.  Nevertheless, conclusory allegations without
> supporting factual averments are insufficient to state a claim on which relief can be
> based.  This is so because a pro se plaintiff requires no special legal training to
> recount the facts surrounding his alleged injury, and he must provide such facts if the
> court is to determine whether he makes out a claim on which relief can be granted.
> Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need
> accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory
> allegations.

Id.  (citations omitted).

## ANALYSIS

    Bower cannot assert claims, in a pro se suit, on behalf of  RISD students, including his

daughter.  The Court further concludes that the federal Defendants should be voluntarily dismissed;

that Bower's federal claims must be dismissed for failure to exhaust administrative remedies; that

the state Defendants have sovereign immunity against suit in federal court; and that any

supplemental state-law claims should be dismissed because the Court's jurisdiction is not based on

diversity of the parties.  Accordingly, the Court will dismiss Bower's case.

**I.      BOWER CANNOT BRING CLAIMS ON BEHALF OF HIS DAUGHTER OR HIS FORMER STUDENTS.**

Bower's complaint contains claims that the Defendants violated Maria's and his former students' rights to certain treatment under the federal special education laws.  But Bower is not the real party in interest on these claims.  See Fed. R. Civ. P. 17.  "[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit."  FDIC v. Geldermann, Inc., 975 F.2d 695, 698 (10th Cir. 1992) (internal quotation marks omitted).  See L.R. Prop. Mgmt., Inc. v. Grebe, 96 N.M. 22, 23, 627 P.2d 864, 865 (1981) ("A real party in interest is . . . one [who] is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit.") (internal quotation marks omitted).  As the United States Court of Appeals for the Tenth Circuit has explained,

> [t]here are three elements to Article III standing: 1) injury-in-fact; 2) causation; and 3) redressability.  An injury-in-fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical.  Causation is found upon a showing that the injury is fairly traceable to the challenged action of the defendant, rather than some third party not before the court.  Redressability requires the plaintiff to show that it is likely that a favorable court decision will redress the injury to the plaintiff.

Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1255 (10th Cir. 2004). (quotation marks, bracket, and citations omitted).  One who is not a real party in interest has no standing to bring suit on behalf of another individual because he cannot show an injury in fact of his own legally protected interest.  The Court must dismiss the claims for injury to Bower's former students or to special education students in general because Bower has no legally-protected interest in their claims and because he is not an attorney.  See Fymbo v. State Farm Fire & Cas. Co., 213

F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). And because Bower is not an attorney, he also cannot bring Maria's claims on her behalf. See Meeker v. Kercher, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."). Pursuant to

§ 1915(e)(2)(B)(ii), the Court will dismiss all claims brought on behalf of Maria Bower and Bower's former students.

## II.   THE COURT WILL GRANT BOWER'S MOTION TO DISMISS THE FEDERAL DEFENDANTS.

Bower has moved to dismiss as Defendants the United States Department of Education's Office of Civil Rights and Office of Special Education, Dave Dunbar, Sandra Sanchez, Paula Martinez, President Bush, and Senator Bingaman. The Court will grant the motion.

## III.   THE COURT WILL GRANT THE RISD DEFENDANTS' MOTION TO DISMISS.

The RISD Defendants contend that Bower's complaint has not given them fair notice of what his claims are, or the grounds and specific statutes on which his claims rest. They further contend that, if Bower is attempting to allege violations of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 to 12213; of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 to 2000e-17; or of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 to 1487, he has failed to exhaust requisite administrative procedures before bringing suit in federal court, and the Court does not have subject-matter jurisdiction over his claims. See Annett v. Univ. of Kan., 371 F.3d 1233, 1238 (10th Cir. 2004) (holding that federal courts do not have jurisdiction

-11-

to review Title VII claims not administratively exhausted by filing a timely complaint with the EEOC); McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1105 (10th Cir. 2002) (noting that "[e]xhaustion of administrative remedies under the [ADA] is a jurisdictional prerequisite to suit in the Tenth Circuit," which is accomplished by filing a complaint with the EEOC); Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1064-66 (10th Cir. 2002) (holding that 20 U.S.C. § 1415 requires parents challenging a child's education under the IDEA to "exhaust administrative measures for available relief before filing a civil action" and noting the steps a plaintiff should take administratively).  The Court construes the RISD Defendants' motion to dismiss for failure to exhaust as one brought under Rule 12(b)(1) (dismissal for lack of subject matter jurisdiction).

When, as here, a defendant contends that a court does not have subject matter jurisdiction because the plaintiff's complaint facially does not contain sufficient facts alleging exhaustion of administrative remedies, as in a rule 12(b)(6) motion, the Court must accept the allegations in the complaint as true.  See United States v. Rodriguez Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001). But "the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that [he] did exhaust."  McBride v. CITGO Petroleum Corp., 281 F.3d at 1106.

Bower's complaint and briefs indicate that he has not exhausted his administrative remedies by filing a complaint with the EEOC or by following the procedures required by the IDEA.  The federal Complaint does not mention filing anything with the EEOC.  Bower does not ask to amend his Complaint.  As mentioned in the summary section of this opinion, Bower alleges that the OCR told him it had referred Bower's discrimination claims to the EEOC.  See Complaint at 24.  But Bower does not allege in his Complaint or in his briefing that OCR did, in fact, transfer the OCR complaint to the EEOC, and he states that he does not believe that such a transfer occurred.  See id.

-12-

Bower contends only that, because he "had been in constant touch with OCR for nearly three years" and because he is not "fully versed in federal regulatory procedure," his claims should go forward. Doc. 41 at 2, 3.  Without more before the Court, Bower has not met his burden to establish exhaustion.

Under certain situations, a complaint filed with the OCR may be transferred to the EEOC. See 29 C.F.R. § 1691.5(b) (providing that the OCR must determine its jurisdiction over a complaint within thirty days of receipt and determine whether the EEOC may have jurisdiction over the matter); 29 C.F.R. § 1691.5(c) (providing that the OCR must transfer to the EEOC a complaint of employment discrimination over which it does not have jurisdiction but over which the EEOC may have jurisdiction).  But Bower also states that his complaint with the OCR was dismissed as untimely filed and that the EEOC never contacted him, which it would have done if the complaint had been transferred to it.  See 29 C.F.R. § 1691.7 (providing that, if the case is transferred to the EEOC and it determines that the Title VII allegations should be dismissed, it must notify the parties and issue a notice of right to sue).  Filing complaints with the EEOC is a prerequisite for this Court to have subject-matter jurisdiction over Bower's ADA and Title VII claims, and exhausting the administrative procedures set forth in § 1415 is required before filing IDEA claims.  Because Bower's Complaint fails to allege that he satisfied either requirement, and because his briefs indicate that giving him an opportunity to amend his Complaint would be futile, the Court must dismiss all of Bower's federal claims[4].

---

[4]  Should Bower obtain counsel so that he could bring claims on Maria's behalf under the IDEA, he would have to exhaust administrative procedures found in § 1415 before filing suit in federal court.

## IV.   **THE STATE DEFENDANTS HAVE SOVEREIGN IMMUNITY.**

None of Bower's allegations state a cause of action against the Public Education Department of the State of New Mexico or the former State Board of Education[5].  And even if they did state a claim, the Secretary and the Public Education Department, which are both arms of the State of New Mexico, have sovereign immunity against suit for damages in federal court.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).  The Court must dismiss these Defendants under § 1915(e)(2)(ii) or (iii).

## V.   **STATE-LAW CLAIMS.**

Bower contends that he has alleged sufficient facts to state other causes of action against certain of the RISD Defendants and that he should be granted summary judgment.  For example, he purports to have alleged a state-law cause of action for wrongful termination against RISD or the local school board and a state-law cause of action for breach of an oral contract to rehire him against Defendant Norfor.  In addition, a liberal reading of Bower's Complaint indicates (and his briefs assert) that he is attempting to state a state-law cause of action for libel against Defendant Willits arising from the negative evaluation.  The RISD School Defendants have not addressed these

---

[5]  In 2004, the New Mexico Legislature enacted the Public Education Department Act (the "Act").  Before the Act was promulgated, the State Board of Education had governing authority, control, management, and direction of the New Mexico public schools in matters not controlled by local school boards.  See N.M.S.A. § 22-2-1(A) (2000) ("The state board is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law.").  The Act created a new state public education department whose secretary now has that authority.  See N.M. Laws 2004, Ch. 27 §§ 1 to 12 ("All references in law to the state board of education shall be deemed to be references to the public education department.  All references to the state department of public education or the department of education shall be deemed to be references to the public education department."); N.M.S.A. § 22-2-1(A) (2004) ("The secretary is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law.").

allegations or causes of action in their motion to dismiss or in their responses to Bower's unsupported motions for summary judgment.  Nevertheless, the Court concludes that, if Bower could state a cause of action, these claims should be dismissed because the federal claims are dismissed and the parties are not diverse.  <u>See</u> 28 U.S.C. § 1367(c)(3) (providing that district courts may decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all federal claims over which it has original jurisdiction).

The Tenth Circuit has instructed district courts that, when federal jurisdiction is based solely upon a federal question, absent a showing that "the parties have already expended a great deal of time and energy on the state law claims, . . . a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial."  <u>United States v. Botefuhr</u>, 309 F.3d 1263, 1273 (10th Cir. 2002).  <u>See</u> <u>Sawyer v. County of Creek</u>, 908 F.2d 663, 668 (10th Cir. 1990) ("Because we dismiss the federal causes of action prior to trial, we hold that the state claims should be dismissed for lack of pendent jurisdiction.").  None of the factors identified in <u>Thatcher Enterprises v. Cache County Corp.</u>, 902 F.2d 1472, 1478 (10th Cir. 1990) – "the nature and extent of pretrial proceedings, judicial economy, convenience, or fairness" –  would be served by retaining jurisdiction over any potential state-law claim in this case.  No discovery has been conducted in this case, and no energy has been expended on the potential state-law claims.  The Court will dismiss any state-law claims.  And because the Court is dismissing all of Bower's federal claims for lack of subject-matter jurisdiction and declining to exercise supplemental jurisdiction over any state-law claims, the Court will not rule on the merits of the motions for summary judgment and related motions.

**IT IS ORDERED** that the Roswell School Defendants' Motion to Dismiss is granted; the

-15-

Plaintiffs' Motion to Deny RISD Defendants' Motion to Dismiss is denied; the Plaintiffs' Second Motion to Deny RISD Defendants' Motion to Dismiss is denied; the Plaintiffs' Motion for Summary Judgment is dismissed; the Plaintiffs' Renewed Motion for Summary Judgment is dismissed; the Roswell School Defendants' Motion to Strike Plaintiffs' Memorandum of Facts in Support of Plaintiffs' Renewed Motion for Summary Judgment is dismissed; the Plaintiffs' Motion for Leave to File Untimely Memorandum in Support of Renewed Motion for Summary Judgment is dismissed; and the Plaintiffs' Motion to Dismiss Federal Defendants is granted.  The complaint is dismissed.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

John Bower,
Taichung City, Taiwan

     *Pro se Plaintiff*

Patricia J. Turner
Canepa & Vidal, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendant New Mexico Department of Education*

Jerry A. Walz
Walz & Associates
Cedar Crest, New Mexico

     *Attorneys for Defendants Susan Sanchez, Barbara Ryan, Barbara Cooper, Barbara Norfor, Lee Willits, Dr. Fresques, James Bignell, Juan Oropesa, ALbertina Silva, Busty Ryan, James Waldrip, Roswell High School Behavioral Specialist, and Mike Kakuska*

-16-